UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

ANNABELLE K. GARRETT, LLC     :
                                      :
     V.                    :  Civil No.:  3:07cv1341 (WWE)
                                        :
AXIOM INTERNATIONAL         :
INVESTORS, LLC               :
                                        :

### **Ruling on Plaintiff's Motion to Quash [Doc. #24], Plaintiff's Motion for Protective Order [Doc. #25] and Defendant's Motion to Compel [Doc. #27]**

On February 5, 2008 defendant served plaintiff with proposed subpoenae *duces tecum* addressed to Trilogy Global Advisors, LLC and two executive search firms.  In response, plaintiff filed a motion to quash the subpoena *duces tecum* [Doc. #24] and motion for protective order, with respect to multiple discovery requests directed to third parties.  [Docs. 25].  On February 28, 2007, defendant filed its opposition to plaintiff's motion to quash and motion for protective order.  [Doc. #32].  Also pending is defendant's motion to compel plaintiff to produce documents and information concerning any search for alternative employment from January 1, 2005 throughout October 13, 2006.  [Doc. #27].  A hearing was held on April 10, 2008.  For the reasons stated below, plaintiff's motion to quash [Doc. #24] and motion for protective order [Doc. #25] are **DENIED.**  Defendant's motion to compel plaintiff to produce documents and information concerning any search for alternative employment from January 1, 2005 throughout October 13, 2006 [Doc. #27] is **GRANTED.**

## I.  Factual Background

On September 6, 2007, Annabelle Garrett ("Garrett") filed her complaint, alleging that Axiom International Investors, LLC, ("Axiom") engaged in unlawful gender and pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq. ("Title VII"), and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat §46a-60(a)(1)("the FEPA").  (Complaint ¶ 1).

Defendant, an asset management firm that manages money for pension funds, institutional investors and wealthy individuals, hired plaintiff as a senior research analyst in September 1999. Id. at ¶6.  Garrett reported to Andrew Jacobson ("Jacobson"), the portfolio manager, chief investment officer, and founder of Axiom.  Id. at ¶11.  In 2001, Garrett was promoted to Vice President.  Id. at ¶11.  In 2003, Garrett notified Axiom that she was pregnant with her first child and that her child was due in April 2004.  Id. at ¶13.

After returning from her first maternity leave, Garrett began discussions with Jacobson for a Consumer Fund that she would be responsible for managing.  Id. at ¶14.  Jacobson and Garrett agreed that Garrett would start the fund as a "paper fund" or "model fund."  Id. at ¶15.  Pursuant to this agreement, Garrett would select stocks and track their performance and profitability as if she were buying and selling those stocks, but she would not actually invest in the companies.  Id.  Jacobson

and Garrett understood that if the Consumer Fund produced a track record of successful investments, that record would be used to encourage investors to allocate their money to this fund. Id. at ¶17. Beginning in January 2005, Garrett selected stocks for the hypothetical fund and kept track of what would have happened if the trades had actually been carried out. Id. at 18. In addition to creating and monitoring the Consumer Fund, she continued her work on the principal Axiom fund. Id. at ¶18.

In or around Autumn 2005, Garrett notified Axiom that she was pregnant and that her child was due in March 2006. Id. at ¶19. In 2006, Garrett had her second child and took maternity leave. Id. at ¶20. Axiom granted Garrett 12 weeks of paid maternity leave and, at her request, Garrett was granted an additional 12 weeks of unpaid leave. Id. Garrett returned to work on September 11, 2006. Id. at ¶21. Upon her return, Jacobson informed her that she would be working exclusively on developing the Consumer Fund. Id.

Garrett was back from maternity leave approximately one month when she was fired on October 13, 2006. Id. at ¶22. Garrett claims that during that month, Jacobson largely ignored her, including at morning meetings held for investment professionals. Id. On October 13, 2006, Garrett was called into a meeting with Jacobson and Jon Yenor ("Yenor"), the director of marketing at Axiom, and was criticized for her performance. Id. at ¶¶23,24. Garrett was told that the performance of the Consumer Fund varied too much from month to month. Garrett

claims that the performance was the direct result of Jacobson's instruction to limit the number of stocks in the Consumer Fund. Id. at 24.  After this meeting, Garrett was dismissed.  Id. at 25.

On October 4, 2006, Garrett interviewed for employment with Axiom's competitor, Trilogy Global Advisors.  Def's Mem. in Supp. of Mot. to Compel at 4.  In April 2007, Garrett was hired by Lazard Asset Management, LLC ("Lazard").  Plf's Mem. in Supp. of Mot. for Protective Order and to Quash Subpoenas at 3.   Garrett left Lazard after approximately two months and transitioned directly into another job as head of a start-up asset management fund where she has been working since.  Id. at 4.

Discovery Dispute

On January 25, 2008, defendant requested that plaintiff sign releases for information from Trilogy and Lazard.  The Trilogy subpoena requested:

> All documents relating, concerning, or pertaining to
> Annabelle K. Garrett, including but not limited to all
> correspondence concerning Ms. Garrett's search for
> employment at Trilogy, Trilogy's recruitment of Ms. Garrett,
> and documents Ms. Garrett provided to Trilogy in connection
> with her search for employment with Trilogy.

Declaration of Roy P. Salins, dated February 28, 2008 at ¶3.  On January 28, 2008, defendant notified plaintiff of its intent to serve subpoenas on two job search firms that plaintiff had used in her attempt to mitigate her damages: Korn/Ferry International and Muse Network, Inc.  Affidavit of Rebecca J. Osborne dated February 8, 2008 at ¶3.  Plaintiff signed a modified release for

Lazard but opposed the release for Trilogy and the executive search firm subpoenas.  Id. at ¶5.

Axiom agreed to rescind its subpoenas on Korn/Ferry International and Muse Network, Inc. based on a sworn affidavit plaintiff provided stating that she "did not consult with executive search firms about alternative employment during the year preceding [her] dismissal from Axiom."[1]  Thus, the only subpoena at issue for this motion to quash is the Trilogy subpoena.  However, the Court considers the Korn/Ferry International and Muse Network, Inc. subpoenas in ruling on plaintiff's application for a protective order.

## II.  **Discussion**

Rule 26 of the Federal Rules of Civil Procedure provides,

> [p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party ....  For good cause, the court may order discovery of any matter involved in the action.  Relevant information **need not be admissible** at the trial if the discovery appears reasonably likely to lead to the discovery of admissible evidence ....

Fed. R. Civ. P. 26(b)(1).  The language of Rule 26 has been interpreted broadly.  Thus, the discovery request need only "encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issues that is or

---

[1] In Def's Mem. in Opp. to Plf's  Mot. to Compel, Axiom rescinded the subpoenas, expressly reserving its right to reissue the subpoenas if further discovery reveals that Garrett contacted or communicated with search firms with the intent of securing alternative employment or if search firms engaged in efforts on Garrett's behalf in the year preceding her dismissal from Axiom. Def's Mem. in opp. to Plf's  Mot. to Compel at 5.

may be in the case." <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351 (1947); <u>Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 756 F.2d 230, 236 (2d Cir. 1985).

District courts enjoy "broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors." <u>Yancey v. Hooten</u>, 180 F.R.D. 203, 207 (D. Conn. 1998). The party opposing the discovery request "bears the burden of demonstrating that its objections should be sustained." <u>Obiajulu v. City of Rochester</u>, 166, F.R.D. 293, 295 (W.D.N.Y. 1996).

Here, the subpoena *duces tecum*, application for protective order and motion to compel seek information regarding the plaintiff's search for employment during her employment with Axiom. Plaintiff argues that the subpoena will not provide any new information because defendant already knows that she was interviewed by Trilogy and she has provided defendant with e-mail exchanges between herself and Trilogy. Plaintiff also argues that the enforcement of this subpoena will damage her reputation in the industry, specifically with Trilogy which works on the "buy-side."[2]

---

[2] The financial industry can be divided into two segments, the "buy-side" and "sell-side." The "buy-side" refers to firms that have a pool of money to spend on buying assets of operating companies. The "sell-side" refers to those financial firms that have services to sell. Garrett works on the "buy-side" of the industry.

Defendants argue that this information is relevant to their defense that Garrett was dismissed for a non-discriminatory reason, i.e. poor performance. The Court agrees. Axiom is seeking to determine when Garrett's contact with Trilogy began and what the nature of that contact was. After only 24 days back from maternity leave, Garrett interviewed with Trilogy. This short period of time might suggest that Garrett's contact with Trilogy began before she returned from maternity leave. If true, this could lead to evidence helpful to Axiom's defense that Garrett lost interest in the Consumer Fund, causing her performance to dwindle. However, evidence that Garrett did not seek employment with Trilogy until much later might help Garrett establish her claim of gender discrimination. Either way, the Court finds this information relevant.

Plaintiff relies on Gambale v. Deutsche Bank, AG, where the court quashed subpoenas served on executive search firms used by the plaintiff both before and after her termination. Gambale v. Deutsche Bank, AG, No. 02civ4791, 2003 WL 115221 (S.D.N.Y. Jan. 10, 2003). Here, Axiom seeks information from the business contacted during plaintiff's employment. This distinguishable scenario was in fact contemplated by the Gambale court, where Gambale was asked to identify each executive search firm she contacted during her employment and to identify the date when she first engaged the firms services. Id. *2.

The Court cannot find that the enforcement of this one subpoena will cause harm to Garrett's reputation in the industry,

In making this argument, plaintiff relies on <u>Conrod v. Bank of New York</u>. <u>Conrod v. Bank of New York</u>, No. 97civ6347, 1998 WL 430546 (S.D.N.Y. July 30, 1998). <u>Conrod</u> is distinguishable from the instant case because that case concerned a subpoena served on the plaintiff's current employer without notice which "caused plaintiff to worry about her continued employment relationship, in a manner amounting to harassment." <u>Conrod v. Bank of New York</u>, No. 97civ6347, 1998 WL 430546 *2 (S.D.N.Y. July 30, 1998). In <u>Conrod</u>, defense counsel was sanctioned for taking such an action because of the "direct negative effect that disclosures of disputes with past employers can have on present employment; subpoenas in this context, if warranted at all, should be used only as a last resort." <u>Id</u>. Here, Axiom has not subpoenaed Garrett's present employer; in fact, Garrett was never actually employed by Trilogy. Moreover, Garrett signed a release for Lazard, by whom she was actually employed for two months following her termination from Axiom. Furthermore, Garrett's lawsuit is already a matter of public record; the Fairfield County Business Journal published an article regarding the case on September 24, 2007. This article is the first link that appears when performing a Google search of Garrett.[3] Presumably any employer and/or investor in today's world would, at a

---

[3] In its papers, Axiom also stated that the sixth link of that Google search is to dockets.justia.com, which shows that plaintiff sued Axiom on September 6, 2007 for job discrimination. However, when the Court ran the Google search, this link did not appear.

minimum, use Google or a similar search engine to research Garrett.

Defendant's motion to compel plaintiff to produce documents and information concerning Garrett's search for alternative employment from January 1, 2005 through October 13, 2006 is likewise relevant to the instant case. In its motion to compel, Axiom asks Garrett to: (i) produce all documents concerning any search for employment she made since September 1, 1999; (ii) identify each prospective employer with whom she sought employment either directly or through a recruiter or other third party since September 1, 1999 and state the dates on which she met with any of these prospective employers; and (iii) identify each person who has knowledge or information concerning her attempts to seek employment with any entity other than defendant since September 1, 1999. Garrett has refused to produce documents and information concerning her search for employment prior to the date on which her employment with Axiom was terminated.

The documents and information Axiom seeks to compel Garrett to produce are relevant and reasonably calculated to lead to the discovery of admissible evidence because Garrett is seeking reinstatement and has represented that she would have remained employed by Axiom but for its allegedly discriminatory and retaliatory treatment of her. Comp. at p. 9-10. To assess the veracity of Garrett's damages claims, Axiom is entitled to know the depth and breadth of her search of employment during her six-

month extended leave she took prior to her dismissal. This discovery also bears on the question of liability as well as damages. As discussed above, evidence of Garrett's pre-termination job search may support Axiom's defense of a legitimate, nondiscriminatory reason for Garrett's discharge.

The Court finds that Axiom's requests are narrowly tailored, use a reasonable date range, seek documents and information relevant to the claims and defenses of this action, and are reasonably calculated to lead to the discovery of admissible evidence.

Accordingly, plaintiff's motion to quash [Doc. #24] and motion for protective order [Doc. #25] are **DENIED.** Defendant's motion to compel plaintiff to produce documents and information concerning any search for alternative employment from January 1, 2005 throughout October 13, 2006 [Doc. #27] is **GRANTED.**

This is not a recommended ruling. This is a discovery ruling and order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. §636 (b)(1)(A); Fed. R. Civ. P. 6(a), 6(e) and 72(a); and Rule 72.2 of the Local Rules for United States Magistrate Judges. As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

ENTERED at Bridgeport this 25th day of April 2008.

> _____/s/_____
> HOLLY B. FITZSIMMONS
> UNITED STATES MAGISTRATE JUDGE